UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------X
LEIGHTON SEOW,

                      Petitioner,                      MEMORANDUM & ORDER
                                                           98-CV-72 (NGG)

            - against -

CHRISTOPHER ARTUZ,
Superintendent, Green Haven
Correctional Facility,

                      Respondent.
------------------------------------------------X
GARAUFIS, United States District Judge.

Pro se petitioner Leighton Seow ("Seow" or "Petitioner") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently incarcerated in Green Haven Correctional Facility in Stormville, New York. Seow was convicted in New York Supreme Court, Kings County, of two counts of Aggravated Assault upon a Police Officer, one count of Robbery in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree. Seow was sentenced to consecutive prison terms of from twelve and one-half to twenty-five years on each assault and robbery count, to run concurrently with a prison term of from five to fifteen years on the weapon possession count.

Seow contests his incarceration on four grounds, arguing that (1) the trial court improperly refused his request for a justification charge pursuant New York Penal Law § 35.15, (2) the trial court should have sentenced him to concurrent terms on the assault and robbery counts pursuant to New York Penal Law § 70.25(2), (3) he was denied effective assistance of counsel because trial counsel failed to interview or produce a witness to support Petitioner's

1

claim of justification, and (4) the prosecution did not prove Petitioner's guilt beyond a reasonable doubt. For the reasons set forth below, Seow's petition is DENIED.

## I. BACKGROUND

### A. Factual Background

In September of 1988, Seow sold cocaine on the street along with friends, including Kevin Webb. (Trial Transcript (Tr.) at 844.)[1] Seow testified that Webb gave him Webb's loaded nine millimeter gun (People s Ex. 37) to hold for Webb while Webb was out of town. (Tr. at 844-45, 860, 863-65.) On September 24, 1988, Seow left his girlfriend's home with her blue knapsack, in which he placed the gun. (Id. at 846-47.) He "hung out" with friends around East 95th Street and Clarkson in Brooklyn until approximately 3:30 a.m. or 4:00 a.m., when he hailed a gypsy cab driven by Ronald Pierre and requested to be driven to East 18th Street and Caton. (Id. at 430-33.) Seow testified that he intended to meet Webb there and return the gun, and that he declined to tell Pierre that he had no money to pay the fare because Webb was supposed to pay it. Pierre drove the cab to East 18th Street and Caton. (Id. at 847-49, 865-66.)

Pierre and Seow disagree about what happened next. Pierre testified that when the cab reached its destination, Seow told Pierre to continue driving, banged his gun on the plexiglass partition between the front and rear seats, and demanded money. (Id. at 437-39, 460-63, 471.) According to Pierre, he gave Seow money through the partition and continued driving, fearing that Seow would shoot him if Pierre let him out of the cab. (Id. at 467-68, 472, 475.)

---

[1] Numbers refer to pages of the minutes of Petitioner's trial, held October 17, 1990 to November 1, 1990, before the Hon. Edward Pincus.

2

Seow, however, testified that when they arrived at the designated corner, Webb was not there as expected, and Pierre refused to wait for him. (Id. at 849, 866-67.) According to Seow, when he could not pay the fare upon Pierre's demand, Pierre said that he would take Seow to the police. (Id. at 849.) Seow tried to jump out of the cab but could not as Pierre started driving. (Id.) Seow testified that he banged on the plexiglass partition with his hand and demanded to be let out, but Pierre refused. (Id. at 849-50, 867.) According to Seow, he never attempted to rob Pierre.

Both witnesses testified that Pierre then saw a marked police car on Coney Island Avenue, which was driven by police officers Charles Guarneri and Thomas Dewitt. (Id. at 850-851, 867.) Pierre swerved in front of the police car and both cars stopped before they hit one another. (Id. at 851, 869.) The officers could see Pierre behind the wheel but could not see the rear of the cab because the windows were darkened. (Id. at 85, 175-76.) Both uniformed officers left the car. (Id. at 851.) Dewitt testified that he then saw the rear window of the cab shatter and felt a bullet hit him in the hip. (Id. at 89-90.) Pierre testified that Seow was shooting at the officers from inside the car. (Id. at 443-44). Seow testified that a gunshot had come from the front of the cab, but he did not state that any windows in the car had broken. He further testified that he had not taken the gun out of the knapsack when the first shot was fired (id. at 849-51, 854).

The officers returned fire. (Id. at 91.) The officers testified that more shots were fired from the back of the cab, and that Seow then kicked the rear passenger's side door of the cab open and came out shooting. (Id. at 177, 180-83, 225-27, 246, 248.) Seow testified that while the officers were firing at the back of the cab, both he and Pierre ducked. (Id. at 851, 870-71.)

3

Seow testified that he fumbled inside the knapsack for the gun, which discharged while inside the knapsack. (Id. at 852.) Seow then removed the gun from the knapsack and decided to step out of the cab on the side facing the officers. He testified that, as he did so, he was shot by one of the officers. (Id. at 852-55, 873.) Seow testified that he then fired at the officers for the first time. (Id. at 852-55, 873.) When asked why he did so, he testified, "Because they were shooting at me and I was scared. . . . I thought they were going to kill me." (Id. at 852-54.) Seow testified that he did not intend to kill the officers or seriously injure them, but that he was only trying to protect himself after Pierre and the police officers had been firing at each other. (Id.) Seow claimed that because the police were shooting at him, he did not put his hands up when he left the car. (Id. at 871-74) Seow shot at the officers at least nine times, and as he did so, the police officers fled. (Id. at 874-75.)

Both officers were injured by Seow's fire in the shootout that then ensued, though they survived. (Id. at 109, 188.) After injuring the officers, Seow drove the patrol car to Kings County Hospital, where he discarded his gun and wallet in the bushes. (Id. at 855-56.) Although there was extensive evidence presented about bullet casings found at the scene of the crime, there was no evidence presented that there were any guns found in or around the taxi cab. (See id. at 259-330) Other than the police officers' guns, the only other gun recovered which matched the bullets fired and recovered from the crime scene was a nine-millimeter Luger, which was found in the yard of a house which was 95 feet from the abandoned patrol car. (Id. at 398, 401, 405, 407.)

After the shoot-out, Pierre's car had three bullets holes in the rear passenger's side door, through which the bullets had entered from the outside. All three bullets were found inside the

4

door. (Id. at 584-87, 594-95, 618.) There was a bullet hole in the rear passenger's side door, through which the bullet had entered from the inside. It was possible that the bullet had come through the rear passenger's side window and hit the inside of the door. (Id. at 600-01, 645.) Also recovered was a spent nine-millimeter Luger shell on the rear floor of the car and a deformed bullet in the window frame of the rear passenger's side door, which had been fired from inside the car. (Id. at 606-09, 617, 619.)

Additional facts will be set forth as they become relevant.

### B. Procedural History

#### 1. *Trial and Verdict*

During the pre-charge conference, defense counsel requested that the court charge the justification defense to the jury. (Id. at 884.) The court refused, finding that there was no reasonable view of the evidence in this case to charge justification. (Id. at 886.) Following the jury trial, Seow was acquitted of two counts of Attempted Murder but convicted of two counts of Aggravated Assault upon a Police Officer, one count of Robbery in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree. On November 26, 1990, Seow was sentenced to consecutive prison terms of twelve and one-half to twenty-five years on each assault and robbery count, to run concurrently with a prison term of five to fifteen years on the weapon possession count.

#### 2. *Direct Appeal*

Petitioner, through counsel, appealed his conviction to the Appellate Division, Second Department, in 1993. He argued that he was denied due process when the court refused to charge the jury on his justification defense. (Defendant's Appellate Division Brief (App. Br.) at

5

30-40.) He also argued that the prosecution's evidence did not prove his guilt of first-degree robbery and second-degree weapon possession beyond a reasonable doubt and that the jury's verdict was against the weight of the evidence. (App. Br. at 40-47.)

The Appellate Division accepted a pro se supplemental brief, dated September 10, 1992, in which Petitioner argued that (1) he was denied his due process right to a fair trial when the trial court refused to charge the jury on (a) the justification defense and (b) the limited probative value of flight (Defendant's Supplemental Pro Se Appellate Division Brief (App. Supp. Br.) at 1-13) and (2) his sentences for Aggravated Assault upon a Police Officer and Robbery in the First Degree should run concurrently (id. at 14-17).

The Appellate Division affirmed the judgment of the trial court, holding that the trial court properly refused to charge the defense of justification because Seow did not offer evidence that a safe retreat was impossible. People v. Seow, 194 A.D.2d 635, 636 (2d Dept. 1993). The court also held that, viewing the evidence in the light most favorable to the prosecution, Seow's guilt was established beyond a reasonable doubt and was not against the weight of the evidence. Id. Finally, the court held that the imposition of consecutive terms of imprisonment was proper because the crimes constituted separate and distinct acts. Id. Seow sought leave to appeal to the New York Court of Appeals by letters dated June 23, 1993 and July 21, 1993. Leave was denied on August 25, 1993. People v. Seow, 82 N.Y.2d 726 (N.Y. 1993).

### 3. *Motion to Vacate*

On September 15, 1996, Seow moved the New York Supreme Court, Kings County, to vacate its judgment of conviction pursuant to New York Criminal Procedure Law Section 440.10(1)(h). He argued that trial counsel's failure to inform Seow of a potential defense

witness who could have supported Seow's justification defense, and her failure to interview and produce this witness, constituted ineffective assistance of counsel. (Seow's Memorandum of Law in Support of his Motion to Vacate his Judgment of Conviction at 1-9.) The motion was denied on March 5, 1997. Seow applied for leave to appeal to the Appellate Division on April 2, 1997. The application was denied on April 25, 1997. Seow then applied to the New York Court of Appeals for leave to appeal. Leave was denied on September 11, 1997, on the ground that the order sought to be appealed was not appealable under New York Criminal Procedure Law Section 450.90(1).

4. *Petition for a Writ of Habeas Corpus*

Seow filed the instant petition for a writ of habeas corpus on December 23, 1997. He argues that (1) the trial court improperly refused his request for a justification charge pursuant New York Penal Law Section 35.15, (2) the trial court should have sentenced him to concurrent terms pursuant to New York Penal Law Section 70.25(2), (3) he was denied effective assistance of counsel because trial counsel failed to interview or produce a witness to support Petitioner's claim of justification, and (4) the prosecution did not prove his guilt beyond a reasonable doubt.

On June 12, 1998, Judge Nickerson dismissed the petition as untimely and denied a certificate of appealability. Seow v. Artuz, 1998 WL 456416, *2 (E.D.N.Y. 1998). Judge Nickerson reasoned that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1220 (1996), "amended 28 U.S.C. § 2244 to require that a habeas petition be filed no later than one year after the date on which a judgment of conviction becomes final by the conclusion of direct review." Seow, 1998 WL 456416 at *1. However, Judge Nickerson noted, "In cases where a judgment of conviction becomes final prior to the effective

7

date of the Act, a petitioner must be accorded at least a 'reasonable time' from the effective date of the Act to file a habeas petition." Seow, 1988 WL 456416 at *1 (quoting Peterson v. Demskie, 107 F.3d 92, 93 (2d Cir. 1997)). Seow's conviction had become final on August 25, 1993, AEDPA became effective on April 24, 1996, and Seow's habeas petition was filed on December 23, 1997, "twenty months after the Act became effective, over four years after the conviction became final, and six months after the petition for collateral relief became final." Id. at *1-2. Judge Nickerson therefore concluded that Petitioner did not file here within a "reasonable time." Id.

On August 12, 1998, Judge Nickerson denied Petitioner's motion for reconsideration of the order dismissing the petition. (Docket Entry No. 13.) On September 3, 1998, Seow appealed the decision of the district court to the Second Circuit Court of Appeals. (Docket Entry No. 15.) On November 17, 1999, the Second Circuit vacated the district court's order in light of Ross v. Artuz, 150 F.3d 97 (2d Cir. 1998), and remanded the matter to Judge Nickerson for further proceedings.

Between January 26, 2001, and June 27, 2002, Petitioner sent five letters to the district court, including a request for a copy of the court's order, a notice of a change of address, and a request for information about the status of his appeal. (Docket Entry Nos. 19-23.)

Judge Nickerson passed away on January 1, 2002. (Federal Judiciary Center Biography of Judge Nickerson, available at http://www.fjc.gov/servlet/tGetInfo?jid=1760.) On April 24, 2006, the case was assigned to this court. (Docket Entry No. 24.) On May 1, 2006, Petitioner sent a letter to the Clerk of the Court requesting information regarding the status of his case. That letter was forwarded to this court. (Docket Entry No. 25.) On May 10, 2006, this court

ordered records for this case from the archives center. (Docket Entry dated May 10, 2006.) These records were never received. On July 9, 2007, Petitioner wrote another letter to this court. (Docket Entry No. 27.) Two days later, this court again ordered the case file, which arrived later that month.

## II. DISCUSSION

### A. Timeliness

After the Second Circuit issued Ross, the reasoning that led Judge Nickerson to conclude that Seow's habeas petition was untimely no longer applies. In Ross, the Second Circuit held that prisoners whose convictions became final prior to the effective date of AEDPA's statute of limitations provision should be allowed a period of one year after that effective date in which to file habeas corpus petitions. Ross, 150 F.3d at 98. The "adoption of a grace period of one year means that petitions filed pursuant to § 2254 . . . are not barred by the statute of limitations established by AEDPA if filed on or before April 24, 1997." Id. at 103.

Although Seow filed his habeas petition on December 23, 1997, twenty months after the effective date of AEDPA, his petition is timely. Seow filed a motion to vacate his conviction in New York Supreme Court, Kings County, on September 15, 1996, 144 days after AEDPA was enacted. 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." The Second Circuit held in Bennet v. Artuz, 199 F.3d 116 (2d Cir. 1999), that Section 2244(d)(2) applies to the one-year grace period for prisoners whose convictions became

9

final prior to the effective date of AEDPA's statute of limitations provision. Id. at 118-19; Hizbullahankhamon v. Walker, 255 F.3d 65, 69 (2d Cir. 2001).

When Seow filed his motion to vacate, the limitations period was therefore tolled until the denial of his motion by the New York Court of Appeals on September 11, 1997. There were 103 days between that date and December 23, 1997, the day Seow filed his habeas petition. This means that the limitations period had run a total of 247 days, which is within the one-year grace period set forth in Ross. Thus, Seow's habeas petition is timely.

**B. Seow's Claims**

1. *Jury Charge on Justification*

Seow argues that the trial court erred in declining to charge the jury on justification pursuant to New York Penal Law Section 35.15, and that this error is a basis for habeas corpus relief. (Petition at ¶ 12.) The Second Circuit has held that a court cannot grant habeas relief on this basis without answering three questions in the petitioner's favor. Davis v. Strack, 270 F.3d 111, 124 (2d Cir. 2001). First, was the justification charge required as a matter of New York State law? Second, if so, did the failure to give the requested charge result in a denial of due process? Third, if so, was the state court's failure of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254? Id. at 124, 131. I will first address whether the justification charge was required as a matter of New York State law. Because I find that it was not, I need not address the two other inquiries.

New York Penal Law Section 35.15 provides, in pertinent part, that–

> 1. A person may . . . use physical force upon another person, when and to the extent he or she reasonably believes such to be necessary to defend himself,

herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person unless:

> (a) The latter's conduct was provoked by the actor with intent to cause physical injury to another person; or
>
> (b) The actor was the initial aggressor.

2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

> (a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such a case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of doing so by retreating[.]

New York Penal Law Section 35.27 adds a further limitation on the use of physical force in self defense, providing that "[a] person may not use physical force to resist an arrest, whether authorized or unauthorized, which is being effected or attempted by a police officer or peace officer when it would reasonably appear that the latter is a police officer or peace officer." New York Penal Law Section 205.30 provides guidance regarding what it means to "resist arrest." That statute provides: "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person."

Under New York law, in determining whether the evidence warrants a justification charge, the court must assess the record in the light most favorable to the defendant. People v. McManus, 67 N.Y.2d 541, 549 (1986); Davis, 270 F.3d at 124-25. "Under New York law justification is a defense, not an affirmative defense; therefore, when the defense is raised on a proper evidentiary record, the People bear the burden of disproving it beyond a reasonable

doubt." Davis, 270 F.3d at 124. "[A] charge on justification is warranted whenever there is any evidence to support it." McManus, 67 N.Y.2d at 549. "[I]f on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified . . . the trial court should instruct the jury as to the defense and must when so requested." People v. Padgett, 60 N.Y.2d 142, 144-45 (N.Y. 1983). "Where a justification charge is warranted, a court's refusal to instruct the jury that the People must disprove the defendant's claim of justification constitutes reversible error." Davis, 270 F.3d at 125 (citing McManus, 67 N.Y.2d at 549 (ordering new trial where justification instruction did not charge that People must disprove justification)).

During Seow's pre-charge conference, Seow's attorney requested that the trial court charge justification, but the trial court concluded that there was "no reasonable view of the evidence in this case to charge justification." (Tr. at 886.) The court went on to explain that Seow was not authorized to use force in self defense because he had a duty to retreat pursuant to Section 35.15(2)(a). (Id. at 886.) The court stated that Seow "had an opportunity to retreat. He had an opportunity to stay in the car. He had an opportunity to put his hands up. . . . All he had to do was just sit there in the car or come out with his hands up or sit in the car with his hands up." (Id. at 886, 889-90.) Based upon all of the evidence presented, the trial court did not err in its determination.

New York law requires this court to assess the record in the light most favorable to the defendant. See McManus, 67 N.Y.2d at 549. Thus, the threshold question is whether, based on Seow's testimony, Seow knew that, with complete personal safety, he could have retreated without the use of deadly force. See New York Penal Law § 35.15(2). Such a determination of

12

reasonableness contains an objective element, but the determination "must be based on the 'circumstances' facing a defendant or his 'situation.'" People v. Goetz, 68 N.Y.2d 96, 97 (N.Y. 1986).

Based upon Seow's failure to explain at trial why he could not have safely remained in the taxi cab, the trial court properly denied defense counsel's request to charge the jury on the defense of justification. In the first place, there was nothing to suggest a danger to Seow's personal safety from within the car. Although Seow testified that he heard a shot emanate from the front of the car, Seow and Pierre both testified that there was a plexiglass divider separating him from Pierre. There was a bullet mark indicating that a bullet had traveled from the inside of the front passenger side out of car. Seow did not testify that there was any damage to the plexiglass divider, nor was there any ballistics evidence suggesting that there was any damage to the plexiglass, despite extensive ballistics analysis done of the entire crime scene. Seow failed to produce any evidence, then, to suggest that a bullet went from the front seat into the backseat area, where Seow sat, or that Pierre had made any threat, either verbal or physical, indicating that Seow's personal safety was endangered. Therefore, there was nothing to suggest that Seow was in any reasonable danger from within the car, even assuming that Pierre also possessed a gun and fired it.

Nor did Seow adduce any evidence suggesting that he was in any danger from shots coming from outside of the car had Seow opted to duck down in the backseat of the car below the windows. None of the police officers' bullets permeated through the walls of the car. Three bullets went into the door and were trapped there, not entering the interior of the car. And, Seow neither testified that any of the bullets had permeated through the car, nor provided a reasonable

13

explanation as to why he could not have safely remained within the car. Therefore, the trial judge's conclusion that Seow could have safely remained in the car, ducking down below the windows, was proper.

In any event, even if Seow could not have safely remained in the car, there is nothing in the record to suggest that he was unable to exit the car on the side facing away from the police officers. All of the evidence in the record supports the finding that the officers were facing the passenger side of the taxi. Had Seow exited the car by the driver's side, there is nothing to suggest that he would have been harmed. As the trial judge pointed out: "[T]here are two doors in the cab. One door faced the police – Sergeant Dewitt. The defendant went out that door shooting. The other door was not facing any officer." (Tr. at 898.) Seow failed to offer any evidence or explanation as to why he could not have exited on the driver's side of the car.

Seow's decision to get out of the car on the side facing the police officers' shots, directly into their fire, was certainly neither reasonable nor justified in light of his ability to either duck down into the rear seat or escape through the car doors on the opposite side of the officers' fire with complete safety to himself. See New York Penal Law § 35.15(2)(a). Under New York State law, then, the trial judge properly denied defense counsel's motion to charge the jury with the defense of justification.

### 2. Consecutive Prison Terms

Seow next claims that the imposition of consecutive prison terms was unconstitutional. (Petition at ¶ 12.) On habeas review, where a sentence is within the range prescribed by state law, the length of the sentence does not present a question of federal constitutional dimension.

14

See White v. Keane, 969 F.2d 1383 (2d Cir. 1992). After review of New York State sentencing law, it is clear that the imposition of consecutive sentences was constitutional.

The imposition of consecutive sentences under New York State law is governed by New York Penal Law Section 70.25(2). Specifically, consecutive sentences are not permitted where "more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offense and also was a material element of the other." The New York Court of Appeals has interpreted "act or omission" to include the actus reus of the offense. People v. Rosas, 8 N.Y.2d 493, 496 (1997). "Actus reus is defined as '[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability.'" Id. at 497 (quoting Black's Law Dictionary 39 [8th ed. 2004]).

Here, Seow received consecutive sentences for the robbery charge and each of the two assault charges – one for each of the police officers injured. The robbery was clearly a crime distinct from the assaults on the two police officers, since it happened prior to the assaults and involved completely distinct actions on the part of Petitioner. Namely, he displayed the gun to Pierre from inside the car, demanded money, and then received money from Pierre as a result of the implied threat. In contrast, the assault charges stemmed from Petitioner's firing shots at the officers which occurred after the completion of the robbery. Thus, the actus reas of the robbery and assault crime were independent and distinct from one another, and the imposition of consecutive sentences was proper under New York law.

Similarly, each of the two assault charges was properly considered to be a separate crime from each another for the purposes of Penal Law Section 70.25(2). The two counts involved two

15

victims and two separate firings of Petitioner's gun. In addition, neither assault was a material element of the other assault, and therefore, each assault required a separate actus reas. Therefore, it was entirely within the court's discretion to impose consecutive sentences. See People v. Brathwaite, 63 N.Y.2d 839, 843 (1984) (upholding imposition of consecutive sentences where separate firings of a gun caused deaths of two victims, and there was no contention that deaths were caused by the same bullet). Therefore, the state court's imposition of consecutive sentences was proper under New York State law, and there is no issue of constitutional dimension for habeas review.

### 3. *Ineffective Assistance of Trial Counsel*

Petitioner next claims that he was denied effective assistance of counsel at trial. (Petition at ¶ 12.) Specifically, he claims that his trial counsel erred by not calling to testify a witness whose statement was contained in a police report, and that this alleged error rose to the level of a violation of his right to representation. Petitioner's claim is denied.

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. In order to prevail on a Sixth Amendment claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. Furthermore, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Strategic choices made

by counsel after a thorough investigation of the facts and law are "virtually unchallengeable." Id. at 690.

More specifically, the decision whether to pursue a particular defense is a tactical choice that does not rise to level of a constitutional violation. Sanchez v. Scully, 613 F. Supp. 1065, 1068 & n. 5 (S.D.N.Y.1985). The same is true with respect to counsel's decision whether to call any witnesses on behalf of the defendant, and if so, which witnesses to call. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987). As repeatedly stated by the Second Circuit, the habeas court "will not second-guess trial strategy simply because the chosen strategy has failed[.]" United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).

The witness in question was a newsstand customer standing near the intersection where the shootout took place. (Petition at Exhibit F.) According to a police report, the witness stated that it was dark at the time of the incident, he was intoxicated at the time, and he was uncertain about what specifically had happened. (Id.) Nevertheless, he stated that he believed that a car pulled up to a police car, two police officers then approached the car, a black male shot one of the officers from the driver's side of the stopped car, and when the other officer fired at the passenger side, a man in the rear of the car began shooting out of the passenger side of the car and then got out and drove away in the police car. (Id.)

Petitioner has provided no evidence that his counsel had not investigated this witness. And, as the trial judge found in his decision, Petitioner has not provided any sworn allegations of fact tending to support his claim. (See Petition at Exhibit H (Decision and Order) at 3-4.) There is therefore insufficient evidence to show that counsel's decision to not call this witness – who

was intoxicated and unsure of what he had seen – was anything other than a tactical choice made by trial counsel. See Sanchez, 613 F. Supp. at 1068 & n. 5. And, since the witness's testimony had no bearing on whether Petitioner could have safely retreated from the car, it could not have provided evidence in support of defense counsel's application for a justification charge. As such, he has not demonstrated that he suffered any prejudice from defense counsel's decision to not call the witness to testify. He has therefore failed to establish that the alleged error rose to the level of a constitutional violation. See Strickland, 466 U.S. at 694. Petitioner's claim is therefore denied.

*4. Sufficiency of the Evidence*

Petitioner finally alleges that his robbery conviction was not sufficiently supported by the evidence. (Petition at ¶ 12.) Specifically, Petitioner claims that Pierre's account of the robbery "defied belief." (App. Br. at 40-47.) For the reasons outlined below, this claim is denied as well.

The federal standard of review for a due process claim that a verdict lacks sufficiency of the evidence is "whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 313 (1979). The Supreme Court has clearly held that the prosecution at trial need not have disproved all other theories of the case in order to sustain a conviction. Id. at 326. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis in original).

18

A person is guilty of Robbery in the First Degree when, with intent to deprive another of property or to appropriate the same to himself, he wrongfully takes such property from an owner and, in the course of doing so, he uses or threatens the immediate use of physical force and is armed with a deadly weapon. Penal Law §§ 155.05, 160.00, 160.15.

At trial, Pierre testified that Seow displayed a gun and demanded money. Pierre then gave Seow money and continued driving so as not to let Seow out of the car. On direct appeal, defense counsel argued that Pierre's decision to not let Seow out of the car "simply defies any even remotely rational belief," since Petitioner was threatening Pierre with a gun. (See App. Br. at 43.) Petitioner's claim that the evidence was insufficient is premised upon a credibility determination. However, a federal court reviewing a claim of insufficient evidence raised in a habeas petition is not free to make credibility judgments about the testimony presented at trial or to weigh conflicting testimony. United States v. Desena, 260 F.3d 150, 154 (2d Cir. 2001); Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989). Consequently, this court cannot substitute its valuation of Pierre's credibility for that of the jury's, and Petitioner's claim must fail on habeas review. In any event, there is nothing patently incredible about Pierre's testimony. Pierre's refusal to let Petitioner out of the car while being held at gunpoint may not have been the best or safest course of action, but there is nothing to suggest that his testimony was fabricated or untrue. Petitioner's claim is therefore denied.

## III. CONCLUSION

For the reasons discussed above, the Petitioner's claims do not warrant habeas relief under 28 U.S.C. § 2254. The Petitioner's request for a writ of habeas corpus is therefore DENIED.

SO ORDERED.

Date: September 25, 2007
Brooklyn, New York

/signed/
_____
NICHOLAS G. GARAUFIS
United States District Judge